# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

THOMAS C.,

     Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY[1],

     Defendant.

No. 24-cv-4004-LTS

**REPORT AND
RECOMMENDATION**

———————————

Thomas C. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **reversed and remanded**.

## I.    BACKGROUND

Claimant was born in 1981. (AR[2] at 188.) He is a high school graduate and reported three years of college. (*Id*. at 219.) Claimant allegedly became disabled due to a car accident in November 2018, herniated discs in his back, head trauma, possible traumatic brain injury, post-head trauma memory loss, constant headaches, depression, anxiety, trigeminal neuralgia (types 1 and 2), and high blood pressure. (*Id*. at 218.)

---

[1] On February 19, 2025, Leland Dudek was named the Acting Commissioner of Social Security.

[2] "AR" cites refer to pages in the Administrative Record.

Claimant's onset of disability date is November 1, 2018. (*Id.*) On January 11, 2022, Claimant filed his application for DIB. (*Id.* at 20, 188.) His claim was denied originally on June 29, 2022 (*id.* at 20, 77-86), and was denied on reconsideration on August 16, 2022. (*Id.* at 20, 87-97.) A hearing was held on January 25, 2023, with Claimant and his attorney Ryan Miner appearing by online video before Administrative Law Judge ("ALJ") David Buell. (*Id.* at 44-76.) Vocational Expert ("VE") Dr. Marnie South, Ph.D., also appeared at the hearing telephonically. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on February 27, 2023. (*Id.* at 20-37.)

Claimant requested review and the Appeals Council denied review on October 17, 2023. (*Id.* at 3-6.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

After receiving an extension from the Appeals Council, (AR at 1-2), on January 19, 2024, Claimant timely filed his Complaint in this Court. (Doc. 1.) On May 29, 2024, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## II.     *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant

2

numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id*. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id*. An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id*. § 404.1520(c). The ability to do basic work activities means the

ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

4

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.    *The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2024. (AR at 22.) The ALJ then applied the first step of the analysis and determined that Claimant had not engaged in substantial gainful activity from his alleged onset date of November 1, 2018. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: migraines, degenerative disc disease, and trigeminal neuralgia. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 25.) The ALJ evaluated Claimant's claims under Listings 11.02(B) and (D) (dyscognitive seizures), 1.15 (disorders of the spine), and 1.16 (lumbar spinal stenosis). (*Id.* at 25-26.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a). He can stoop, kneel, crouch, and crawl occasionally. He is able to perform work that does not require climbing ladders or other exposure to hazards such as work at unprotected heights. He is able to perform work in a setting with no more than moderate background noise. He is able to perform work tasks that occur indoors. He is able to perform work that does not require more than occasional

5

speaking. The claimant is able to perform work in a setting where the worker is permitted to stop work every one minute for thirty minutes with the freedom to stand and stretch while remaining at the workstation.

(*Id.* at 26.) Also at the fourth step, the ALJ determined that Claimant was unable to perform his past relevant work. (*Id.* at 35.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including ink printer, tube clerk, and table worker. (*Id.* at 35-36.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.*)

**B.    The Substantial Evidence Standard**

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . .  [T]he threshold for such evidentiary sufficiency is not high. . . .  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

6

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## III. DISCUSSION

Claimant alleges that the ALJ committed reversible error by (A) failing to properly consider whether his migraine headaches equal Listing 11.02.; and (B) failing to properly consider his credibility and mischaracterizing his symptoms, particularly the frequency and duration of his migraine headaches. (Doc. 8.)

### A. Step Three – Listing 11.02

#### 1. Parties' Arguments

Plaintiff argues that he meets all the requirements of Listing 11.02(B). (Doc. 8 at 18.) Plaintiff asserts that he consistently complained to medical providers regarding migraine headaches occurring two, three, and four times per week. (*Id.*) Plaintiff asserts that contrary to the ALJ's determination that he did not report the required frequency and

Case 5:24-cv-04004-LTS-MAR    Document 13    Filed 02/27/25    Page 7 of 22

duration of his migraine headaches to his medical providers, he did in fact report that his "headache frequency fluctuated anywhere from daily to 3-4 times per week depending on the efficacy of the medication." (*Id.* at 19.) Plaintiff also contends that "the ALJ did not evaluate listing equivalence and did not obtain a medical expert to assist [the ALJ] in establishing such equivalence despite ample medical evidence in the record supporting listing 11.02(B) equivalence." (*Id.* at 20.)

The Commissioner argues that the ALJ properly determined that Claimant's migraine headaches did not meet or equal the criteria of Listing 11.02. (Doc. 10 at 7.) The Commissioner maintains that the ALJ's consideration of Claimant's migraine headaches in "the RFC analysis led to the conclusion at step five that [Claimant] was not disabled" and such "analysis provides adequate rationale for the conclusion that [Claimant's] headaches would not satisfy the much more stringent criteria of a Medical Listing." (*Id.*)

### 2. *Pertinent Medical Evidence*

On September 7, 2021, met with Dr. Mei He, M.D., for evaluation of migraine headaches. (AR at 1384.) Dr. He noted that on November 1, 2018, Claimant was in an automobile accident and "smashed his face on the shoulder on the right side and after that he had increasing migraine with pulsation, right side facial pain and numbness from the midline all the way to the ear." (*Id.*) Claimant reported that he took "Nortriptyline for the migraine which helped some." (*Id.*) Upon examination, Dr. He diagnosed Claimant with migraine headaches and prescribed medication as treatment. (*Id.* at 1385.)

On November 1, 2021, met with Alison R. Owings, NP, for "recheck" of headache as follow-up from his evaluation by Dr. He. (*Id.* at 1380.) Regarding his migraine headaches, Claimant reported:

> [H]is headaches are under good control having 2-3 headache days per week, or 12 headache days per month. He states amitriptyline is helpful in controlling his headaches, and he notes if he misses a dose his headaches

tend to be more severe. He does feel the intensity of his headaches has also decreased, and they are not bothersome for him at this time.

(*Id.*)  Ms. Owings diagnosed Claimant with chronic migraine headaches, noting that Claimant's headaches were "occurring previously on a daily basis, with improvement on amitriptyline, though continued to have at least 12 headache days per month on medication." (*Id.* at 1382.) Ms. Owings continued Claimant on medication for treatment of his migraine headaches.  (*Id.*)

On February 1, 2022, Claimant had a follow-up appointment with Ms. Owings. (*Id.* at 2399.) Ms. Owings noted that, at his last visit, Claimant was having 12 headache days per month and reported that "his headaches have overall remained the same, with no significant change since beginning on the medication." (*Id.*) Ms. Owings also noted that Claimant continued taking "amitriptyline which has significantly improved his facial pain [and] his sleep habits, though not significantly impacted his headaches." (*Id.*) Upon examination, Ms. Owings continued Claimant on medication for treatment of his migraine headaches.  (*Id.* at 2397.)

On May 2, 2022, Claimant returned to Ms. Owing for another follow-up regarding his chronic migraine headaches.  (*Id.* at 2388.) Ms. Owing noted that Claimant was "transitioned to Aimovig for migraine prophylaxis at his last visit" and he reported "significant improvement in his headaches." (*Id.*) Specifically, Claimant had reported headaches on a "daily basis" in the past but was "now having 1-2 dull headache days per month." (*Id.*) Ms. Owings continued Claimant on medication for treatment of his migraine headaches.  (*Id.* at 2390.)

On August 8, 2022, Claimant had a follow-up appointment with Ms. Owings. (*Id.* at 2672.) Ms. Owings noted that Claimant "continues on Aimovig 140 mg once a month and previously had excellent improvement in his headaches, but reports now having 3-4 headache days per week." (*Id.*) Claimant also reported that since starting Nurtec, he

9

found it to be more beneficial than the Aimovig. (*Id.*) Upon examination, Ms. Owings continued Claimant on medication as treatment for his migraine headaches and increased Claimant's dosage of Nurtec. (*Id.* at 2674.)

On October 5, 2022, Claimant had another follow-up appointment with Ms. Owings. (*Id.* at 2668.) Ms. Owings noted that Claimant "continues on Aimovig 140 mg once a month and previously had excellent improvement in his headaches, but reports now having 2-3 headache days per week." (*Id.*) Ms. Owings also noted that Claimant was using Nurtec "with benefit." (*Id.*) Upon examination, Ms. Owings recommended that Claimant continue on medication as treatment for his migraine headaches. (*Id.* at 2670.)

### 3. *Relevant Law*

At step three of the sequential evaluation process, an ALJ must determine whether a claimant's impairment or combination of impairments meets or equals one of the listings. 20 C.F.R. § 404.1520(a)(4)(iii). "An impairment meets a listing only if it 'meet[s] all of the specified medical criteria." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (alteration in original). "To prove that an impairment or combination of impairments equals a listing, a claimant 'must present medical findings equal in severity to all the criteria for the one most similar listed impairment.'" *Id.* (quoting *Sullivan*, 493 U.S. at 531); *see also* 20 C.F.R. § 404.1526(a) ("Your impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."). "The determination is strictly a medical one, *see Cockerham v. Sullivan*, 895 F.2d 492 (8th Cir. 1990), and the claimant bears the burden of showing that her impairment meets or equals the listing, *see Pyland v. Apfel*, 149 F.3d 873 (8th Cir. 1998)." *Baldridge v. Kijakazi*, No. 3:20-cv-00161 PSH, 2021 WL 5912159, at *6 (E.D. Ark. Dec. 14, 2021).

10

Generally, "[a]n ALJ's failure to adequately explain his factual findings is 'not a sufficient reason for setting aside an administrative finding.'" *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017) (quoting *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008)). Specifically, "[a]n ALJ's failure to address a specific listing or to elaborate on his conclusion that a claimant's impairments do not meet the listings is not reversible error if the record supports the conclusion." *Id.*; *see also Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) ("There is no error when an ALJ fails to explain why an impairment does not equal one of the listed impairments as long as the overall conclusion is supported by the record"); *Pepper ex rel. Gardner, v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Although it is preferable that ALJs address a specific listing, failure to do so is not reversible error if the record supports the overall conclusion.").

SSR 17-2P is also instructive:

> If the adjudicator at the hearing . . . level believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step [three].

*Id.*, 2017 WL 3928306, at *4 (Mar. 27, 2017).

The listings do not include an impairment based on migraines. However, SSR 19-4P provides that an ALJ may "find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id.*, 2019 WL 4169635, at *7 (Aug. 26, 2019). Listing 11.02 (epilepsy) "is the most closely analogous

listed impairment for . . . a primary headache disorder." *Id.* "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)," and an ALJ may find that such a headache disorder medically equals the listing. *Id.* Both paragraphs B and D of listing 11.02 require the claimant to experience headaches medically equivalent to "dyscognitive seizures," which are seizures "characterized by alteration of consciousness without convulsions or loss of muscle control." 40 C.F.R. Pt. 404 Subpt. P, App. 1, § 11.00(H)(1)(b). Specifically, paragraph B requires "dyscognitive seizures . . . occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." *Id.*, § 11.02(B); *see also* SSR 19-4P, 2019 WL 4169635, at *7 (outlining the same requirements in discussing listing 11.02, paragraph B). Paragraph D requires "[d]yscognitive seizures . . . occurring at least once every two weeks for at least three consecutive months . . . despite adherence to prescribed treatment . . . and a a marked limitation in one of the following . . . physical functioning; or understanding, remembering, or applying information; or interacting with others; or concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Id.*, § 11.02(D); *see also* SSR 19-4P, 2019 WL 4169635, at *7 (outlining the same requirements in discussing listing 11.02, paragraph D).

Additionally, in determining medical equivalency, SSR 19-4P provides that:

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of the headache events; adherence to prescribed treatment; side effects of treatment (for example . . . drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie

down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id*. (alteration in original).

### 4. *Analysis*

At step three, the ALJ set forth the requirements for meeting or equaling Listing 11.02(B) and 11.02(D). (AR at 25.) Without any analysis or explanation, the ALJ concluded that "there is no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment." (*Id*. at 25-26.)

At step five, the ALJ also addressed Claimant's history of migraine headaches, noting that at a meeting with Stacie Webner, NP, In June 2021 to establish care after moving from Texas to Iowa, Claimant reported suffering from migraine headaches approximately twice monthly but found that amitriptyline helped decrease the frequency and severity of the headaches. (*Id*. at 30, 1505-1506.) Next, the ALJ noted that, in September 2021, Dr. He evaluated Claimant for migraine headaches and stated "[h]e reported taking nortriptyline for his migraine which helped some." (*Id*. at 31, 1384.) Further, the ALJ noted that in November 2021, Claimant established care with Dr. Alisa M. Olson, D.O., who reviewed treatment notes which stated that Claimant "had been on amitriptyline for preventative therapy for his migraines[.]" (*Id*. at 31, 1397.) The ALJ also noted that in May 2022, Claimant returned to Dr. He[3] and reported "improvement in his headaches. He reported he was having headaches on a daily basis and was not [sic] only have [sic] 1-2 dull headache days per month." (*Id*. at 31, 2388.) The ALJ also stated that "[i]n a follow-up examination, the claimant again reported that Aimovig

---

[3] Actually, Claimant met with Ms. Owing who appears to work with Dr. He, and in any event, shared her findings with Dr. He and Dr. He appears to have signed off on Ms. Owing's findings and recommendations. *See* AR at 2388-90.

provided excellent improvement in his headaches." (*Id.* at 32.) The ALJ's statement is incorrect. The record provides that Claimant "continues on Aimovig 140 mg once a month and previously had excellent improvement in his headaches, but reports now having 2-3 headache days per week." (*Id.* at 2668.) Based on the foregoing, the ALJ concluded that "after full review of the record, the undersigned has accounted for the claimant's migraine[s] . . . in the exertional, postural, and environmental limitations contained in his residual functional capacity." (*Id.* at 32.)

The ALJ also determined that Claimant's allegations were inconsistent with the objective medical evidence. (*Id.*) Regarding Claimant's migraine headaches, the ALJ stated:

> The claimant testified at the hearing that he has four to five headaches a week that persist for four hours to four days and average six to eight hours in duration. This is not reported in the record. Instead, the claimant reported that amitriptyline, Aimovig, and Nurtec helped treat his headaches (Exhibits 1F/68, 2F/346, 18F/3, and 25F/1). Specifically, the claimant reported only having one to two dull headaches per month with the use of medications (18F/3).

(*Id.*) The ALJ's citation to the foregoing Exhibits does not fully support his statement that medication helped treat Claimant's headaches. For example, Exhibit 1F/68 is from a May 2019 appointment to establish care with Emily Dunn, RN FNP-C, and only provides that Claimant has migraines and takes medication for them. (*Id.* at 389.) It does not state the efficacy of the medication or whether it helps Claimant. Similarly, Exhibit 25F/1 provides that Claimant's headaches had improved with medication but the ALJ leaves out that even with medication Claimant continued to have 2-3 headaches per week. (*Id.* at 2668.) Exhibit 2F/346 is a January 2020 office visit which simply states that "amitriptyline is helping headaches." (*Id.* at 742.) Like Exhibit 1F/68, there is no information regarding the frequency or severity of Claimant's headaches. Finally, Exhibit 18F/3 does provide that medication reduced his headaches to 1-2 dull headaches

14

per month, but subsequent follow-up appointments demonstrate that Claimant's headaches, while continuing on medication, increased to 3-4 times per week in August 2022 and 2-3 headaches per week in October 2022. *Compare* AR at 2388 *with* AR at 2668, 2672.

Neither the record nor the ALJ's analysis at step three and step five provide much substance with regard to Claimant's migraine headaches. The Commissioner's brief is of no help either, as it merely recites some law on the subject and then provides a conclusory statement, without any explanation or citation to the record, that the ALJ's RFC analysis "provides adequate rationale for the conclusion that his headaches would not satisfy the much more stringent criteria of a Medical Listing." (Doc. 10 at 7.)

Turning to the record, which is voluminous, it provides ample evidence that Claimant suffers from migraine headaches. *See* AR at 323, 326, 329, 333, 338, 343, 348, 353, 358, 368, 373, 378, 383, 388, 389, 742, 1396-97, 1415, 1455, 1493, 1505-06, 2487, and 2790. However, none of these record citations address the severity or frequency of Claimant's headaches. Generally, these record citations simply refer to a diagnosis of migraine headaches and that Claimant takes medication for migraine headaches. The record evidence which provides a little more detail includes: (1) a single discussion of the severity of Claimant's migraines ("migraine with pulsation, right side facial pain and numbness from the midline all the way to the ear"; AR at 1384); and (2) discussion of the frequency of Claimant's migraines (2-3 headaches per week/12 per month in November 2021, AR at 1380; 2-3 headaches per week/12 per month in February 2022, AR at 2399; 1-2 headaches per month in May 2022, AR at 2388; 3-4 headaches per week in August 2022, AR at 2672; and 2-3 headaches per week in October 2022, AR at 2668).

To meet or equal 40 C.F.R. Pt. 404 Subpt. P, App. 1, § 11.02(B) Claimant must show: (1) dyscognitive seizures or in this case migraine headaches, (2) which occur at

least once a week for at least 3 consecutive months, and (3) despite adherence to prescribed treatment. *Id.*, § 11.02(B); SSR 19-4P, 2019 WL 4169635, at *7 (Aug. 26, 2019). Here, Claimant appears to meet these requirements. The ALJ, at step two determined that Claimant's migraine headaches were a severe impairment which he considered at step three under Listings § 11.02(B) & (D). Medical records provide that from November 2021 through February 2022, Claimant had 2-3 headaches per week while using prescribed medication. *See* AR at 1380, 2399. In May 2022, Claimant's use of medication reduced his headaches to 1-2 headaches per month. *See* AR at 2388. However, from August 2022 through October 2022, Claimant had 2-4 headaches per week. *See* AR at 2668, 2672.

This case is similar to *Johnson v. Commissioner of Social Security*, No. 3:21-05082-CV-RK, 2023 WL 181090 (W.D. Mo. Jan. 13, 2023). In *Johnson*, the district court explained that:

> Here, the ALJ found that Plaintiff suffers from migraines following a 2005 car accident. The ALJ noted that Plaintiff's migraine headaches were not intractable and that she "was showing improved symptoms." The ALJ noted that Plaintiff is generally active and takes her son to school, goes to support groups a few times a month, completes chores, and generally takes care of her son on a daily basis (albeit with the assistance of a personal assistant for her son, who has autism). At the same time, Plaintiff's medical records support consistent migraine headaches occurring multiple times a week throughout the period following the alleged onset date, for which Plaintiff's doctors prescribed and pursued various treatment plans. Even if the medications Plaintiff was prescribed were able to relieve the migraine headaches when they occurred (as Plaintiff testified, the medications usually alleviated the migraine headaches within a few hours), they nonetheless continued to occur, it seems at least as frequently as once a week for three consecutive months. The critical question is how the migraines impacted Plaintiff when they occurred and the other relevant considerations as explained in SSR 19-4P.

On the existing record, because the ALJ failed to expressly address SSR 19-4P and to explain why Plaintiff's migraine headaches are not medically equal to Listing 11.02B, the Court "cannot say whether there was sufficient evidence to support [the ALJ's] decision," and remand is therefore appropriate. *Hesseltine v. Colvin*, 800 F.3d 461, 466 (8th Cir. 2015) (remanding case to ALJ where ALJ did not expressly determine medical equivalence or explain why the claimant failed to satisfy the applicable medical equivalence standard where the evidence suggested claimant did satisfy the medical equivalence standard); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding the case to the ALJ where the ALJ made only "general" findings that claimant's impairments did not meet or equal a listed impairment where the record evidence could otherwise support a finding that the claimant's impairments equal a listing); *Nail v. Kijakazi*, No. 4:20 CV 1422 CDP, 2022 WL 832328, *7 (E.D. Mo. Mar. 21, 2022); *Phillip v. Saul*, No. 8:19CV422, at *26 (D. Neb. July 15, 2020)

2023 WL 181090, at *3.

Like in *Johnson*, I find that based on the record before me, the ALJ's failure at step three to explain why Claimant's headaches are not medically equal to Listing § 11.02(B) requires remand because I "cannot say whether there was sufficient evidence to support [the ALJ's] decision." *Hesseltine*, 800 F.3d at 466. Accordingly, I recommend that the District Court reverse and remand this matter to properly address medical equivalency under Listing § 11.02(B) for Claimant's migraine headaches at step three of the five-step sequential evaluation.

**B.    Credibility Determination**

**1.    Parties' Arguments**

Claimant argues that the ALJ did not properly consider his subjective complaints in determining his RFC. (Doc. 8 at 10.) Claimant maintains that the ALJ "mischaracterized and misstated certain evidence related to the duration and frequency of [his] migraine headaches" and "[a]s a result, the ALJ's RFC assessment is not supported by substantial evidence." (*Id.* at 11.) Claimant asserts that the medical

17

evidence in the record shows that between February 2022 and October 2022, he complained of headaches occurring at least 12 times per month to 2-3 times per week. (Id. at 12.) Claimant contends that the ALJ did not consider that evidence, but instead, focused on a single medical visit in May 2022 where he stated that with medication, he was having only 1 to 2 headaches per month. (*Id.* at 12-13.) Claimant emphasizes that "the only explanation offered by the ALJ to support his rejection of [Claimant's] subjective complaints [focuses on] one single visit while excluding all other medical evidence to the contrary. This is an error because incorrect or imprecise evidence 'cannot constitute substantial evidence to support an ALJ's decision.'" (*Id.* at 13.) (Quoting *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994)). Claimant maintains that the ALJ's reliance on a single medical visit "is a perfect example of cherry-picking evidence to substantiate a desired outcome" and thus, "the ALJ's rejection of [Claimant's] subjective complaints was improper because the ALJ cherry-picked evidence to support the RFC." (*Id.*)

The Commissioner argues that the ALJ properly took Claimant's migraine headaches into consideration when determining the Claimant's RFC and included appropriate limitations based on Claimant's headaches. (Doc. 10 at 9.)

### 2. *Pertinent Evidence*

In addition to the medical evidence outlined in section ***III.A.2*** above, Claimant provided the following testimony at the administrative hearing. In January 2023, Claimant testified that he was having 4-5 migraine headaches per week. (AR at 51.) Claimant stated that his migraines, among other factors, are triggered by trigeminal neuralgia. (*Id.* at 52.) According to Claimant, he takes multiple medications as preventatives for the migraines. (*Id.*) Claimant testified that, on average, his migraines last six to eight hours, but that they can last as little as four hours and as long as multiple days. (*Id.* at 53.) When having a migraine headache, Claimant stated that he finds a

quiet, dark place and avoids doing anything. (*Id.*) In addition to the average length of six to eight hours for a migraine, Claimant testified that he needs about two hours of recovery after the migraine subsides. (*Id.* at 54.) Claimant indicated that medication has reduced the frequency of the migraines from 6-7 migraines per week to 4-5 migraines per week. (*Id.* at 55.)

Additionally, Claimant's "Headache Questionnaire," which he filled out in July 2022, is generally consistent with his testimony. In the questionnaire, Claimant stated that trigeminal neuralgia was a trigger for his migraine headaches. (*Id.* at 260.) Claimant indicated that he had daily headaches that generally lasted 4-6 hours, but sometimes longer, including up to multiple days. (*Id.* at 261.) Claimant stated that when he has a migraine, he lays down in a dark room and tries not to move. (*Id.*)

### 3. Relevant Law

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972

(8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### 3. Analysis

In his decision, the ALJ addressed Claimant's credibility as it relates to his migraine headaches as follows:

> The undersigned does not find the claimant's allegations to be consistent with the objective medical evidence and other evidence of record. . . . The claimant testified at the hearing that he has four to five headaches a week that persist for four hours to four days and average six to eight hours in duration. This is not reported in the record. Instead, the claimant reported that amitriptyline, Aimovig, and Nurtec helped treat his headaches (Exhibits 1F/68, 2F/346, 18F/3, and 25F/1). Specifically, the claimant reported only having one to two dull headaches per month with the use of medications. (Exhibit 18F/3).

(AR at 32.) The ALJ also found that Claimant "reported performing activities that are inconsistent with his allegations of disability." (*Id.*) The ALJ noted that Claimant is able

to complete his personal care and dress himself, is able to assist with household chores such as washing dishes, making beds, drying clothes, and occasionally cooking and looking after his children, and is able to play video games on his phone. (*Id.*) The ALJ concluded that Claimant's allegations of disability were not "consistent with the objective medical evidence and other evidence of record." (*Id.* at 33.)

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations. *See* AR at 26-27. The ALJ also at various points in his decision, addressed some of the *Polaski* factors and offered some reasoning for finding Claimant's subjective allegations of disability less than credible. I am unpersuaded, however, the ALJ gave "full consideration to all the evidence presented relating to [Claimant's] subjective complaints." *Polaski*, 739 F.2d at 1322. The ALJ's primary reason for discounting Claimant's subjective allegations is alleged inconsistencies with the objective medical evidence. However, as discussed in section ***III.A.4*** above, the ALJ's citations to the record were not accurate and the limited pertinent medical evidence suggests that the frequency of Claimant's migraine headaches was greater than the ALJ found. Based on the record, Claimant generally had 2-3 headaches per week/12 per month in November 2021 and February 2022, *see* AR at 1380, 2399, 1-2 headaches per month in May 2022, *see* AR at 2388, and 3-4 headaches per week in August 2022 and 2-3 headaches per week in October 2022. *See* AR at 2668, 2672. Moreover, the above outlined frequency of Claimant's migraines all occurred while Claimant was taking medication to treat his headaches. Additionally, the fact that Claimant could perform routine hygiene and help with some household chores alone does not necessarily detract from his credibility. *See Dixon v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003) ("[A] claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment."). While Claimant's testimony may be somewhat exaggerated compared to the evidence in the record, the ALJ's

reasoning for finding Claimant incredible is inconsistent with the record. Because I am recommending that this matter be remanded for further consideration of Claimant's migraine headaches at step three of the sequential evaluation and because the ALJ's reasoning is inconsistent with the record as a whole, I am also recommending that on remand the ALJ reconsider his credibility determination for Claimant as it relates to his migraine headaches. Accordingly, I recommend that the District Court reverse and remand this matter for further consideration of Claimant's credibility.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **REVERSE and REMAND** the decision of the ALJ for further consideration as discussed herein.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 27th day of February, 2025.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa